# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**Atlanta Division**

| | | |
|---|---|---|
| MICHAEL KRUGER, JR., individually and on behalf of Moriah Kruger and Micah Kruger, minors; and LINDA SANDERS-LUCAS, on behalf of the Estate of April Kruger, and Jack Morrow, a minor, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) | Civil Action No.: <u>1:09-cv-0600 TCB</u> |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) ) | |

## AMENDED COMPLAINT

COME NOW the Plaintiffs, by and through counsel, and for their causes of action against Defendant allege and aver as follows:

### Jurisdiction and Venue

1.      This action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671, *et seq.* The Court is vested with jurisdiction pursuant to 28 U.S.C. § 1346(b).

2.      Prior to the institution of this action, Plaintiff April Kruger filed a claim with the United States Department of the Navy as required by 28 U.S.C. § 2675(a).  The Department of the Navy failed to make a final disposition of Plaintiff's claim within six months.  Accordingly, April Kruger elected to file suit in accordance with 28 U.S.C. § 2675.

3.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) because Plaintiffs reside within the Atlanta Division of the Northern District of Georgia.

### General Allegations

4.      April Kruger died on October 17, 2009 in Fulton County, Georgia.

5.      At all times relevant herein up to the date of her death, April Kruger was the spouse of Michael Kruger, Jr., an active duty sailor in the United States Navy.

6.      At the time of her death, April Kruger was the natural parent of three minor children.

7.      Moriah Kruger and Micah Kruger were the natural children of April Kruger and Michael Kruger, Jr.

8.      Jack Morrow was the natural child of April Morrow Kruger and Curtis Ray Gann, Sr.

9.      Curtis Ray Gann, Sr. never acknowledged paternity of Jack Morrow.

10.     Linda Sanders-Lucas is the natural mother of April Kruger and the grandmother of April Kruger's three children.

11.     On December 16, 2009 Linda Sanders-Lucas was appointed executor of April Kruger's estate pursuant to letters testamentary issued by the Fulton County Probate Court.

12.     In accordance with April Kruger's last will and testament, Linda Sanders-Lucas has been granted custody of Jack Morrow, a minor.

13.     At all times relevant herein, the United States of America owned and operated the Naval Hospital in Guam and the Naval Medical Center in Portsmouth, Virginia.

14.     At all times relevant herein, the agents, servants, employees and personnel of defendant United States of America were acting within the course and scope of their employment in providing medical treatment to April Kruger.

15.     On or about September 2004, April Kruger, while nursing her second child, noticed a large lump in the outer quadrant of her right breast, something she had not experienced while breast feeding her first child.

16.     Shortly after discovering the lump described in Paragraph 15, April Kruger informed her obstetrician at the Naval Hospital Guam of the presence of this discreet lump. Mrs. Kruger was referred to the General Surgery Service at Naval Hospital Guam.

17.     Shortly after being referred to the General Surgery Service at Naval Hospital Guam, April Kruger was examined by Dr. Thanh Huynh, a female general surgeon. Dr. Huynh confirmed the presence of a lump and opined that Mrs. Kruger was probably experiencing a blocked milk duct or mastitis. No diagnostic tests were performed. Mrs. Kruger was advised to make a follow-up appointment.

18.     April Kruger subsequently returned to the General Surgery Service at Naval Hospital Guam for further evaluation of her persistent breast lump. She was again examined by Dr. Thanh Huynh who opined that the identified lump did not feel like it was malignant. Dr. Huynh further advised Mrs. Kruger that she was at low risk for breast cancer because of her age (34 at the time). At this meeting Mrs. Kruger specifically requested a mammogram. Dr. Huynh advised Mrs. Kruger that a mammogram would be ineffective because she was nursing. When Mrs. Kruger asked whether a biopsy could be performed, Dr. Huynh stated that a biopsy would be ineffective because it would be "like cutting into a sponge" and would leak due to Mrs. Kruger's lactation while breast feeding. Mrs. Kruger informed Dr. Huynh that she was uncomfortable that nothing was being done to investigate the suspicious breast lump since her maternal grandmother had died of breast cancer. An ultrasound was ordered by Dr. Huynh.

19.     On or about November 17, 2004, April Kruger returned to Naval Hospital Guam at which time an ultrasound was performed on her persistent breast lump. The radiology report stated: "No evidence of mass in the area of clinical concern. Consider mammography for further evaluation. Negative findings should not deter biopsy of a clinically suspicious lesion."

3

20.     Subsequent to the ultrasound described in Paragraph 19 above, April Kruger received a telephone call from Dr. Huynh informing her that the results were negative.

21.     Subsequent to receiving the telephone call described in Paragraph 20, April Kruger was examined again by Dr. Huynh at Naval Hospital Guam.  Dr. Huynh confirmed that Mrs. Kruger's breast lump had not changed.  Another ultrasound was ordered.

22.     On or about June 27, 2005, April Kruger underwent a directed right breast ultrasound.  The radiology report stated, "No suspicious solid or cystic masses are detected."

23.     Subsequent to the ultrasound described in Paragraph 22, April Kruger received a telephone call from Dr. Huynh informing her that the results were negative and no cancer was present.  Dr. Huynh further advised that Mrs. Kruger should check with a doctor at her husband's new duty station because Michael Kruger was about to be reassigned to the continental United States.  Dr. Huynh further advised Mrs. Kruger to present for an examination one month after she had stopped breast feeding her baby.

24.     In July 2005, April Kruger departed Guam as she accompanied her husband to his new duty assignment in Norfolk, Virginia.  His reporting date was not later than September 30, 2005.  In route to Norfolk, Michael Kruger underwent 30 days of training and took 30 days of leave.  During this period Mrs. Kruger and her children visited with relatives throughout the United States.

25.     On or about September 2005, Michael Kruger, April Kruger and their children arrived at Michael Kruger's new duty station in Norfolk, Virginia.

26.     On or about October 19, 2005, April Kruger presented to the U.S. Navy Boone Primary Care Clinic in Norfolk, Virginia, seeking a pregnancy test which proved to be positive.  She was therefore referred to the OB/GYN Clinic at Portsmouth Naval Medical Center.

4

27.     During October or November 2005, April Kruger presented to the OB/GYN Clinic at the Portsmouth Naval Medical Center where she was examined by Dr. Sarah VanderPol.  Mrs. Kruger informed Dr. VanderPol of the persistent lump in her right breast.  Dr. VanderPol examined Mrs. Kruger and confirmed the presence of a palpable abnormality.  Dr. VanderPol ordered a breast ultrasound.

28.     On or about November 22, 2005, a breast ultrasound was performed and reported, "1.  Negative right breast ultrasound.  2.  Clinically suspicious abnormalities should be further evaluated.  Negative ultrasound findings should not preclude further evaluation."

29.     Subsequent to the ultrasound described in Paragraph 20 above, Dr. VanderPol advised Mrs. Kruger that no mammogram would be performed because of her pregnancy.

30.     On or about May 27, 2006, April Kruger gave birth to her third child by way of caesarian section.

31.     On or about November 28, 2006, while breast feeding her infant, April Kruger noted a hard knot in her right breast in the same location of her previous breast lump.  She telephoned the U.S. Navy Boone Clinic to report this problem.

32.     On or about December 6, 2006, April Kruger again called the U.S. Navy Boone Clinic to report the presence of a persistent lump in her right breast.  She was referred to her Primary Care Manager at the U.S. Navy Boone Clinic.

33.     On or about December 7, 2006, April Kruger was examined at the U.S. Navy Boone Clinic by Physicians' Assistant Sarah Ward who identified a mass in the superior lateral quadrant of the right breast.  She also noted enlarged axillary lymph nodes.  An expedited diagnostic mammogram was ordered even though Mrs. Kruger was breast feeding her infant during this period.

34.     On or about December 8, 2006, April Kruger underwent a diagnostic mammogram and breast ultrasound at Portsmouth Naval Medical Center which was reported, "highly suggestive of multifocal or multicentric invasive carcinoma w/extensive DCIS." A core needle biopsy was recommended.

35.     On or about December 8, 2006, April Kruger underwent an ultrasound-guided biopsy of her right breast. Pathology demonstrated infiltrating ductal carcinoma.

36.     On or about January 2, 2007, April Kruger underwent her initial chemotherapy treatment at the Portsmouth Naval Medical Center to shrink the size of her tumors.

37.     On or about March 9, 2007, April Kruger underwent a right modified radical mastectomy and axillary lymph node dissection at the Portsmouth Naval Medical Center. Pathology reported 20 of 27 lymph nodes positive for cancer. It also revealed that the surgical margins were not clear and that dermal involvement was present.

38.     On or about April 9, 2007, April Kruger underwent re-excision of the upper lateral modified radical mastectomy flap at the Portsmouth Naval Medical Center.

39.     Subsequent to the surgery described in Paragraph 30, April Kruger underwent additional chemotherapy at the Portsmouth Naval Medical Center which was completed on June 21, 2007.

40.     On or about July 16, 2007, April Kruger began an eight-week regimen of radiation therapy at the Portsmouth Naval Medical Center which was completed on September 10, 2007.

41.     Following the treatment described in Paragraph 32, April Kruger began hormone therapy which included chemical castration of her ovaries.

42.     On or about October 31, 2007, April Kruger moved to Georgia in order to receive treatment at the Emory Winship Cancer Institute in Atlanta, Georgia.

6

43.     In April 2008, April Kruger underwent a PET Scan which revealed two suspicious lymph nodes with increased metabolic activity.

44.     In July 2008, April Kruger underwent a repeat PET Scan which revealed 11 lymph nodes with increased metabolic activity and swelling.

45.     On or about July 30, 2008, April Kruger underwent an endobronchial biopsy which demonstrated that cancer had spread to lymph nodes between her lungs.

46.     On or about August 2, 2008, April Kruger began an oral chemotherapy regimen to treat her metastatic breast cancer.

47.     On or about August 5, 2008, April Kruger underwent surgery to remove her ovaries.

48.     April Kruger continued to receive palliative treatment for her cancer until her death on October 17, 2009.

## Negligence

49.     Plaintiffs allege that the United States through its agents, servants and employees during the period described above negligently failed to timely diagnose and treat April Kruger's breast cancer by:

a.     Failing to perform appropriate diagnostic tests and procedures to determine the true nature of the lump in April Kruger's right breast until breast cancer had spread to her lymph nodes and beyond.

b.     Failing to provide proper instructions to April Kruger for medical follow-up of her identified right breast lump.

c.     Negligently reassuring April Kruger that the lump in her right breast was most likely benign.

7

d.      Other negligence of which Plaintiffs are not currently aware and which

may become evident in the course of discovery.

## Causation

50.     As a direct and proximate result of the negligence described above, April

Kruger's breast cancer was allowed to spread to distant parts of her body and ultimately caused

her death.

## Count I – Survival Action

51.     The allegations set forth in Paragraphs 1 through 50 are herein incorporated by

reference.

52.     As a direct and proximate result of the aforementioned negligence, Linda

Sanders-Lucas as the duly authorized representative of the estate of April Kruger makes claim to

the following damages pursuant to the law of Guam, viz, 19 GCA § 31104:

a.      Loss of earnings incurred as a result of April Kruger's injury prior to her

death;

b.      Expenses sustained as a result of April Kruger's injury prior to her death.

## Count II – Wrongful Death Claim of Michael Kruger, Jr.

53.     The allegations set forth in Paragraphs 1 through 50 are herein incorporated by

reference.

54.     As a direct and proximate result of the aforementioned negligence, Michael

Kruger, Jr., makes claim to the following damages pursuant to the law of Guam, viz,

7 GCA § 12109:

a.      Compensation for the loss of April Kruger's love, support, services,

society, companionship, comfort, care, advice, counsel and consortium;

       b.     Compensation for the economic losses resulting from April Kruger's death, including the loss of income, support, services, and funeral/burial expenses.

### Count III – Wrongful Death Claim of Moriah Kruger, a minor

55.    The allegations set forth in Paragraphs 1 through 50 are herein incorporated by reference.

56.    As a direct and proximate result of the aforementioned negligence, Michael Kruger, Jr. on behalf of Moriah Kruger, a minor, makes claim to the following damages pursuant to the law of Guam. viz. 8 GCA § 12109:

       a.     Compensation for the loss of April Kruger's love, support, services, society, companionship, comfort, care, advice and counsel;

       b.     Compensation for the economic losses resulting from April Kruger's death.

### Count IV – Wrongful Death Claim of Micah Kruger, a minor

57.    The allegations set forth in Paragraphs 1 through 50 are herein incorporated by reference.

58.    As a direct and proximate result of the aforementioned negligence, Michael Kruger, Jr. on behalf of Micah Kruger, a minor, makes claim to the following damages pursuant to the law of Guam. viz. 8 GCA § 12109:

       a.     Compensation for the loss of April Kruger's love, support, services, society, companionship, comfort, care, advice and counsel;

       b.     Compensation for the economic losses resulting from April Kruger's death.

## **Count IV – Wrongful Death Claim of Jack Morrow, a minor**

59.     The allegations set forth in Paragraphs 1 through 50 are herein incorporated by reference.

60.     As a direct and proximate result of the aforementioned negligence, Linda Sanders-Lucas on behalf of Jack Morrow, a minor, makes claim to the following damages pursuant to the law of Guam. viz. 8 GCA § 12109:

a.     Compensation for the loss of April Kruger's love, support, services, society, companionship, comfort, care, advice and counsel;

b.     Compensation for the economic losses resulting from April Kruger's death.


WHEREFORE, Plaintiffs pray that judgment be entered in their favor against the United States of America in the amount of $5,000,000 and to award such other relief as is just and reasonable under the circumstances.

**Respectfully submitted,**

MICHAEL KRUGER, JR., individually and on behalf of Moriah Kruger and Micah Kruger, minors; and LINDA SANDERS-LUCAS, on behalf of the Estate of April Kruger, and Jack Morrow, a minor

/s/James D. Flowers
James D. Flowers
Georgia State Bar No. 001100
Attorney for Plaintiffs
JAMES D. FLOWERS LAW FIRM
305 Longmoor Way
Alpharetta, Georgia 30022
Phone: (770) 751-9559
Fax:    (770) 752-4645
Email: jamesdflowers@comcast.net

10

/s/Richard H. Gasperini
Richard H. Gasperini
Virginia State Bar No. 47459
Attorney for Plaintiffs
GOODMAN, ALLEN & FILETTI, PLLC
4501 Highwoods Parkway, Suite 210
Glen Allen, Virginia 23060
Phone: (804) 346-0600
Fax:    (804) 346-5954
Email: rgasperini@goodmanallen.com